FILED
at____O'clock &___min___M
NOV - 8 2005
United States Bankruptcy Court
Columbia, South Carolina (7)

ENTERED
NOV - 8 2005
S. R. P.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

In re:

Robert David Faust, Sr., and
Catherine Richardson Faust,

Debtors.

Case No. 05-01958
Chapter 13

**ORDER**

This matter comes before the Court upon the motion of the United States Trustee (the "UST") for the Imposition of Sanctions against Debtors' Attorney (the "Motion"). The Motion is filed pursuant to 28 U.S.C. § 586 and 11 U.S.C. §§ 307 and 105. Having considered the record before the Court, including the pleadings filed and the circumstances of this case, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52, made applicable to bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 7052.[1]

**FINDINGS OF FACT**

1.  Debtors' petition for relief pursuant to Chapter 13 of the United States Code was filed on February 18, 2005 by attorney Jason Moss ("Counsel") of Moss & Reed, P.A..[2] On May 31, 2005, the UST filed a motion to convert Debtors' Chapter 13 case to one under Chapter 7 alleging bad faith in Debtors' substantially undervaluing 20.28 acres of land located in Irmo, South Carolina (the "Real Property"). Debtors placed a value of $2,700.00 on the Real Property on their Schedule A based upon a tax appraisal from Richland County, South Carolina.

---

[1] To the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are also adopted as such.

[2] The law firm of Moss & Reed, P.A. has been the largest volume filer of consumer bankruptcy cases in the District of South Carolina for a number of years.

2.  Counsel indicates that following their 11 U.S.C. § 341 meeting of creditors, held on March 15, 2005, Debtors were advised by Counsel to provide a commercial real estate appraisal prior to confirmation. Debtors obtained the appraisal but disagreed with the value. Nevertheless, Counsel forwarded the appraisal to the Chapter 13 Trustee for review with an explanation of Debtors' position.

3.  On June 22, 2005, Debtors filed an amended Schedule A which reiterated the same value for the Real Property listed on Schedule A but included a statement that their value was based upon its being zoned as farmland. Debtors further indicated that an appraisal of the property at $176,000.00, attached to their amended Schedule A, was only accurate if the Real Property is zoned as commercial, and that the tax appraisal assessed the Real Property as farm land valued at $2,700.00.[3]

4.  The commercial appraisal also indicated that the highest and best use of the Real Property is improved residential, thus, the UST argues that no zoning change is needed to market the Real Property for residential development.

5.  An Order was entered on August 1, 2005, resolving the UST's motion to convert.[4] In the Order, the Court determined that Debtors failed to meet their responsibility to provide an accurate representation of the value of their Real Property and found cause to exist under 11 U.S.C. § 1307(c) to dismiss or convert Debtors' case. However, since it is in the best interests of the creditors and the estate for Debtors to remain in bankruptcy and for their Real Property to be sold, the Court allowed Debtors, based upon their request, to remain in Chapter 13 for a period of 120 days after confirmation of their Chapter 13 Plan in order to attempt to sell or borrow against the Real Property and pay creditors in full with 7% interest. Debtors' case would then be converted to Chapter 7 if,

---

[3] The tax appraisal was attached to Debtors' original filing of Schedule A.

[4] Further factual findings concerning the Real Property and the listing of the value of the Real Property on Schedule A are set forth in the Order.

at the end of the 120-day period, they have not been able to raise such funds.

6.    The Motion for Imposition of Sanctions alleges that Counsel knew when he filed Debtors' case that the value placed on the Debtors' property was significantly less than its' worth. The UST alleges that Counsel's conduct is sanctionable based upon the South Carolina Bar's Rules of Conduct and based upon this Court's inherent authority to regulate litigants' behavior and to sanction a litigant for improper of bad faith conduct.

7.    At a hearing prior to the final hearing on the Motion, the Court indicated a preliminary view that an order detailing steps to be taken by Counsel and his firm to improve upon and ensure a thorough review of petitions and schedules may be more appropriate than monetary sanctions.

8.    At the continued hearing on the Motion, the UST presented the Court with a Consent Order, attached hereto, informing the Court that the Motion has been resolved and that Counsel is to make a donation of $1,500.00 to the pro bono program of the South Carolina Bar within fifteen (15) days of the entry of the order. Counsel was not present at the time of submission of the Consent Order. The Court has determined that, based on the facts of this case, further consideration is warranted.

## CONCLUSIONS OF LAW

The issue before the Court is whether Counsel should be sanctioned pursuant to the Court's inherent authority based upon Debtors' undervaluation of Real Property on Schedule A.

The UST contends that Counsel's conduct is subject to the <u>South Carolina Rule of Professional Conduct 407</u>, <u>Rule 3.3</u>, Candor Toward the Tribunal, which provides as follows:[5]

(a) A lawyer shall not knowingly:

(1) Make a false statement of material fact or law to a tribunal;
(2) Fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;

---

[5]   South Carolina Rule of Professional Conduct 407 has been amended, effective October 1, 2005.

3

(3) Fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or

(4) Offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.

(b) The duties stated in paragraph (a) continue to the conclusion of the proceeding, and apply even if compliance requires disclosure of information otherwise protected by Rule 1.6.

(c) A lawyer may refuse to offer evidence that the lawyer reasonably believes is false.

(d) In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse.

While the above Rule of Conduct is applicable to attorneys practicing in South Carolina, and therefore before this Court, this Rule references the submission of evidence before the Court. Schedules are not typically considered "evidence" as contemplated by this Rule of Conduct unless they are offered for admission before the Court in a proceeding.

However, even if a debtor's schedules were upon their filing to be considered "evidence" offered by an attorney before the Court, the Comment to the South Carolina Rules of Professional Conduct indicates both that an advocate does not "vouch for the evidence submitted in a cause" and that although an advocate is responsible for pleadings and other documents prepared for litigation, he or she is not "usually required to have personal knowledge of matters asserted therein." Comment to <u>South Carolina Rules of Professional Conduct 407, Rule 3.3</u>.

Therefore, while a debtor's attorney should be mindful of the importance of accuracy and completeness in the information provided in debtors' petition, schedules and statements, the above-cited Rule does not appear to mandate that a debtor's attorney is the guarantor of such information in all instances.

Debtors clearly have a duty to complete their schedules accurately and honestly, with full disclosure. Debtors acknowledge this duty upon the signing of their petition, which requires debtors to "declare under penalty of perjury that the information provided in th[e] petition is true and correct." The signature of the attorney is also required, but there is no corresponding "penalty of perjury" language. Likewise, debtors are required to verify their petitions, lists, schedules, statements and amendments pursuant to Federal Rule of Bankruptcy Procedure 1008, and declare under penalty of perjury that their schedules are true and correct. In cases filed prior to October 17, 2005, debtors' attorneys are not required to sign debtors' schedules of assets and therefore attest to the valuations contained therein.

Pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, effective October 17, 2005, the Bankruptcy Code has been amended to provide a new requirement that "[t]he signature of an attorney on a petition shall constitute a certification that the attorney has no knowledge after an inquiry that the information in the schedules filed with such petition is incorrect." 11 U.S.C. § 707(b)(4)(D). The language set forth in § 707(b)(4)(D) parallels Rule 9011. Although this particular addition is with respect to cases under Chapter 7, 11 U.S.C. §§ 526-528 impose greater duties on debtor's attorneys, and section 319 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 sets forth the "sense of Congress" that Rule 9011 should be amended to include a requirement that all documents submitted by a debtor, including schedules, be subject to a reasonable inquiry by debtor or debtor's counsel to verify that the document is well grounded in fact and warranted by law. It would appear that, if debtor's attorneys already had a general duty to warrant the information provided by debtors in their schedules, amendments

imposing such a duty would not have been necessary.[6]

Pursuant to § 105, the statutory basis upon which the UST seeks relief, whether Counsel's investigation and representation is sanctionable is within the discretion of the Court. In this case, the Court is not convinced that Counsel acted with any intent to mislead the Court. Debtors in this district have often relied upon county tax appraisals in estimating value. If anything, counsel should have recognized that the low value stated in the tax appraisal in this case indicated some need for further inquiry. However, when he realized the issue, counsel advised Debtors that a commercial real estate appraisal would be necessary on the Real Property. Debtors obtained the appraisal but disagreed with the resulting value. Debtors' Counsel forwarded the appraisal to the Chapter 13 Trustee for review and explained Debtors' disagreement with the value.[7] Debtors then amended their Schedule A to disclose the value listed in the appraisal, but reiterated their position that the Real Property was worth $2,700.00. Debtors maintained their position throughout, even at the hearing on the UST's Motion to Convert, and Counsel disclosed their position as well as the valuation set forth in a commercial appraisal. The Court ultimately determined that Debtors should have known that the Real Property was worth more than $2,700.00 when they filed their Schedule A. However, despite this outcome, the Court declines to impute Debtors conduct to Counsel in this case, particularly given the disclosures made by Counsel. See In re Phillips, C/A No. 02-10461-W, slip

---

[6] The Court is not absolving a debtor's attorney from any duty pursuant to Fed. R. Bankr. P. 9011 or to accurately reflect the information provided by a debtor. See, e.g., In re Style, C/A No. 02-06803-W, slip op. at *2 (Bankr. D.S.C. Sept. 5, 2002) (imposing sanctions under Fed. R. Bankr. P. 9011(c) for schedules with numerous inaccuracies and deficiencies). The standard under Rule 9011(b)(3) provides that "the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Bankr. P. 9011(b)(3).

[7] Chapter 13 Trustees have an independent duty pursuant to 11 U.S.C. § 1302, referring to 11 U.S.C. § 704(4), to investigate the financial affairs of the debtor.

op. at 5 (Bankr. D.S.C. Feb. 21, 2003). The Court is satisfied with the result in this case, which appears to be in the best interest of the estate and creditors, as set forth in the August 1, 2005 Order.

Furthermore, following the filing of the UST's Motion, the Court is aware that Counsel, the Chapter 13 Trustee and the office of the UST met in an attempt to address the concern that Counsel, in his high volume practice, devote sufficient resources and attention to promote proper disclosure by debtors. Since that time, it appears that Counsel has made a good faith attempt to address such issues.[8] Accordingly, based upon the facts of this case, and in the discretion of the Court, it is hereby

**ORDERED** that the UST's Motion for Sanctions is denied.

**AND IT IS SO ORDERED.**

*/s/ John E. Waites*
**UNITED STATES BANKRUPTCY JUDGE**

Columbia, South Carolina
November 8, 2005

---

[8] It further appears that concerns raised by the office of the UST resulted, in part, in the dissolution of Counsel's existing practice and the departure of his partner in the firm in order to create a structure that can more readily accommodate and manage a heavy volume of cases.